**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA,**

**CASE NO. 8:20-CR-184-T-35JSS**

**v.**

**JOSE LUIS BECERRA QUINONES,**
      **Defendant.**

_____

**SENTENCING MEMORANDUM**

The Defendant, JOSE LUIS BECERRA QUINONES, through undersigned counsel and pursuant to U.S.S.G. §3B1.2, 2D1.1, and 18 U.S.C. §3553(a), hereby files this Sentencing Memorandum in support of a reasonable sentence, which is not greater than necessary to accomplish the purposes of sentencing, as enumerated in 18 U.S.C. §3553(a)(2). As grounds in support Mr. Becerra Quinones states as follows:

## I.      History and Characteristics

Mr. Becerra Quinones is 29 years old and a native of Colombia. Before his arrest he worked as a self-employed salesperson, where he sold various items to local stores or tradespeople.[1] However, the money he was earning was barely enough for food and living expenses, as he earned approximately $3 to $6 per day. Mr. Becerra Quinones was raised in Tumaco, Colombia by his mother and father; who both work to support the large family which includes Mr. Becerra Quinones and seven siblings.[2] Mr. Becerra Quinones's family was impoverished growing up and he went hungry often. Mr. Becerra Quinones did not

---

[1] Pre-Sentence Investigation Report, *United States v. Jose Luis Becerra Quinones*, Docket No. 8:20-cr-184-T-35JSS, Part C, ¶59.
[2] Id., Part C, ¶42.

have adequate clothing and would sing in public for money to buy breakfast before school started.[3]

Mr. Becerra Quinones has now realized that he made the biggest mistake of his life when he decided to get into the boat that took him into the middle of the Pacific Ocean and led to him being detained and arrested for this criminal case. He is shocked by the wide world of illegal drugs that he did not know much about until being arrested for this case, and realizes that illegal drugs are evil and that being part of that world only leads to a life of sickness and problems. This is no excuse for Mr. Becerra Quinones's actions, but he did not make this mistake so he can get rich quick and live a life of luxury. He only made this mistake because he felt it was a way to escape the impoverished lifestyle that he had been stuck in for his entire life.

Mr. Becerra Quinones is a very calm and respectful individual. He is extremely remorseful for the crime that he committed and feels horrible for his actions. He is anxious about his future and the future of his family, whose life has also been turned upside down by this criminal case.

The U.S. Coast Guard discovered Mr. Becerra Quinones and his codefendants in a vessel on May 14, 2020, in the Pacific Ocean about 87 nautical miles southwest of Panama.[4] He and the others were indicted on June 4, 2020, in the Middle District of Florida, Tampa Division.[5] On December 17, 2020, Mr. Becerra Quinones entered a plea of guilty to one count of conspiracy to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 21 U.S.C.

---

[3] Id., Part C, ¶43.
[4] Id., Part A, ¶9.
[5] Id., Part A,¶1-3.

§960(b)(1)(B(ii), 46 U.S.C. §§ 70503(a) and 70506(a) and (b).[6]

## II.      Guidelines Calculation

Mr. Becerra Quinones's Presentence Investigation Report (PSR) lists his base offense level as a 38, pursuant to U.S.S.G. §2D1.1(c)(1), for an offense involving more than 450 kilograms of cocaine. The PSR added 2 levels pursuant to U.S.S.G. §2D1.1(b)(3)(b) for the vessel being a low-profile, or semi-submersible vessel. The PSR then subtracted 3 levels for acceptance of responsibility and a timely plea pursuant to U.S.S.G. § 3E1.1(a) and (b). Taking all this into account, the PSR found Mr. Becerra Quinones' total offense level to be 37.[7]

Mr. Becerra Quinones requests a 2-level reduction pursuant to U.S.S.G. §2D1.1(b)(17) and §5C1.2(a)(5) (safety-valve reduction) for providing truthful information regarding his involvement in the offense to the government, as Mr. Becerra Quinones provided a truthful proffer to the government on February 11, 2021. This 2-level reduction would place Mr. Becerra Quinones at a total offense level of 35.

Mr. Becerra Quinones has no prior criminal history so he is in Criminal History Category I.[8] Therefore the PSR estimates his guideline range to be 210-262 months imprisonment.[9] Once the 2-level safety valve reduction is applied, Mr. Becerra Quinones's guideline range would be 168-210 months imprisonment. Finally, the PSR also contains a statutory provision of a minimum term of imprisonment of ten years, which will no longer apply due to the safety valve reduction.

## III.     Mr. Becerra Quinones's History and Characteristics of his Offense

---

[6] Id., Part A, ¶5.
[7] Id., Part A, ¶21-31
[8] Id., Part B, ¶33-37.

[9] Id., Part D, ¶63.

**Suggest That a Downward Variance Sentence of 108 Months Imprisonment or Less Would be "Sufficient but Not Greater Than Necessary" to Comply with the Purposes of Sentencing in 18 U.S.C. §3553(a) of Just Punishment, Public Protection, and Deterrence**.

Although the guidelines are "the starting point and the initial benchmark" for determining the appropriate sentence, "[t]he Guidelines are not the only consideration" and the sentencing court must consider all of the 18 U.S.C. §3553(a) factors in crafting a sentence. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). When considering the §3553(a) factors, the sentencing judge may give more weight to some factors than others. *See United States v. Pauley*, 511 F.3d 468, 476 (4th Cir. 2007). Judges "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough v. United States*, 128 S.Ct. 558, 570 (2007).

This Honorable Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in § 3553(a)(2)," which are "the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3553(a)(2). In "determining the particular sentence to be imposed," the Court must consider these purposes, the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)–(7).

A downward variance sentence of 108 months imprisonment or less is appropriate and just according to the factors that must be examined under 18 U.S.C. § 3553(a). This court should consider the critical fact that Mr. Becerra Quinones has zero prior criminal history. His involvement in this case was an aberration, a huge lapse in judgment that will live with him for the rest of his life. Additionally, this offense was non-violent and did not involve any harm to persons or property. Mr. Becerra Quinones's impoverished upbringing and lifestyle is also a factor that this court should consider and that warrants a downward variance.

Due to the above reasons a sentence of 108 months or less followed by a 5-year term of supervised release will be "sufficient but not greater than necessary" to accomplish all of the purposes of sentencing enumerated in 18 U.S.C. § 3553(a).

### a.  A downward variance sentence of 108 months or less adequately reflects the seriousness of the offense.

Mr. Becerra Quinones' role in this offense was that of a mariner; he did not have any special experience or hold any higher role in the scheme. He did not organize the conspiracy and had no authority over any of the other individuals involved in the plan. Further, Mr. Becerra Quinones had no idea how much cocaine was on board the boat that he boarded. He was not involved in placing the cocaine on board and did not know how much cocaine was on the boat even after he boarded. He was a follower in this situation, and did whatever his co-defendants told him to do, especially co-defendant Fernandez-Castro. Because of this, the goal of deterrence can be accomplished with a sentence of 108 months imprisonment or less.

Mr. Becerra Quinones has no criminal history and has never been to prison before. He has no familiarity with the criminal world outside this offense. A sentence of 108

months imprisonment is even more devastating for him than for someone from the United States with the same sentence. Mr. Becerra Quinones is going to be cut off from his family for a long time, in a country where he doesn't speak the primary language, and in a word that he is unfamiliar with. Because of this cultural isolation and his complete lack of any criminal history, a sentence of 108 months or less is just punishment for Mr. Becerra Quinones and adequately reflects the seriousness of the offense.

> **b.  A downward variance sentence of 108 months or less will adequately protect the public.**

Mr. Becerra Quinones does not require a sentence longer than 108 months to protect the public from any further crimes by him. Mr. Becerra Quinones will never return to this country again after he completes his sentence and deportation. Furthermore, given his lack of criminal history and characteristics, he will never attempt this crime again or any drug-related crime. There are no factors here that suggest a risk of recidivism. Mr. Becerra Quinones's only motivation for this crime was to support himself and his family, and he does not show any characteristics of someone who will repeat this criminal behavior or any other type of criminal behavior.

Mr. Becerra Quinones statistically bears the hallmarks of someone with an extremely low risk of reoffending because of his first offender status. Sentencing Commission studies show that minimal or no prior involvement with the criminal justice system is a powerful predictor of a reduced likelihood of recidivism. *See USSC, A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score,* at 15 (2005).

Increased imprisonment in this case is not necessary to establish deterrence and protect the public. Evidence of the deterrent value of imprisonment is ambiguous at best,

and not a sound basis upon which to sentence. *See* Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules; Finding and Using the Philosophy of the Federal Sentencing Guidelines,* 40 Am.Crim. L.Rev. 19, 61-62 (2003). Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." *Id.*; *see also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("[C]ertainty of punishment is empirically known to be a far better deterrent than its severity."). Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. *See* Andrew von Hirsch et al., *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999), summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. *Id.* at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id.* While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." *Id.* at 2. The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id.* at 1. According to "the best available evidence, . . . prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen et al., *Prisons Do Not Reduce Recidivism: The*

*High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011).

Further, Mr. Becerra Quinones's arrest and incarceration for this case has caused terrible anxiety and harm to his family in Colombia, and a sentence greater than 108 months will cause even more harm to them, as they are very reliant on him for their financial survival.

## IV. Conclusion

A downward variance sentence of 108 months imprisonment or less would provide "just punishment" for this offense, would "reflect the seriousness of the offense," and would "promote respect for the law." Additionally, such a sentence will reasonably reflect Mr. Becerra Quinones's cooperation with the government, his history and characteristics, and will more than adequately punish him for this non-violent crime that was an aberration in his life.

Wherefore, the Defendant, Jose Luis Becerra Quinones, respectfully moves this Honorable Court, based upon the factors enumerated in 18 U.S.C. §3553(a), to impose a total sentence no greater than 108 months of incarceration to be followed by a 5-year term of supervised release. This sentence will provide a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

Respectfully submitted,

OMAR ABDELGHANY
550 N Reo St., Suite 300
Tampa, FL 33609
Telephone: (813) 461-5291
attorney@tampa-criminal-attorney.com

*Omar Abdelghany*
Omar Abdelghany

Fla. Bar No. 105682

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send a notice of the electronic filing to all parties of record, on this 22nd day of March, 2021.

*Omar Abdelghany*
Omar Abdelghany
Fla. Bar No. 105682